**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| JAMES BANKS, | : | |
| | | Civil Action No. 08-6272 (NLH) |
| Petitioner, | : | |
| | | |
| v. | : | **OPINION** |
| | | |
| WARDEN JEFF GRONDOLSKY, | : | |
| | | |
| Respondent. | : | |

**APPEARANCES:**

Petitioner <u>pro se</u>
James Banks
FCI Fort Dix
Fort Dix, NJ 08640

**HILLMAN**, District Judge

   Petitioner James Banks, a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  The sole respondent is Warden Jeff Grondolsky.

---

   [1] Section 2241 provides in relevant part:

   (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
   (c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

Because it appears from a review of the Petition that Petitioner is not entitled to issuance of the writ, the Court will dismiss the Petition.  See 28 U.S.C. § 2243.

## I.   BACKGROUND

Petitioner was convicted, pursuant to a guilty plea, in the U.S. District Court for the Eastern District of Virginia of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).  Petitioner was sentenced to a 90-month term of incarceration.  He is presently confined pursuant to that sentence.  See United States v. Banks, Criminal No. 03-0088 (E.D. Va.).

Petitioner alleges that he has successfully completed the Bureau of Prisons Residential Drug Abuse Treatment Program, but that he has been deemed categorically ineligible for early release under the program because of his conviction for being a felon in possession of a firearm.  Petitioner alleges that he has exhausted his administrative remedies.[2]

---

[2] In the Bureau of Prisons' responses to Petitioner's administrative remedies, copies of which are attached as exhibits to the Petition, Petitioner was advised that he was denied early release eligibility pursuant to 28 C.F.R. § 550.58 and Program Statement 5330.10, Drug Abuse Programs Manual, which reflect the BOP Director's exercise of discretion to exclude inmates whose current offense is a felony that involved the carrying, possession, or use of a firearm, as well as Program Statement 5162.04, Categorization of Offenses, which identifies the 18 U.S.C. § 922(g) offense as one that, at the Director's discretion, precludes Petitioner from early release.

Here, he asserts that Program Statement 5162.04, pursuant to which he alleges he was denied eligibility for early release, is invalid. He alleges that Program Statement 5162.04 was promulgated in violation of the "notice and comment" requirements of the Administrative Procedure Act.[3] Petitioner asks this Court to order the Bureau of Prisons to release him immediately or, in the alternative, to order the BOP to reconsider his eligibility for early release without regard to Program Statement 5162.04.

II.  STANDARDS FOR A SUA SPONTE DISMISSAL

United States Code Title 28, Section 2243 provides in relevant part as follows:

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v.

---

[3] Petitioner does not argue that his offense does not fall within the terms of the Program Statement or that the Program Statement otherwise has been applied to him incorrectly.

Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).  Nevertheless, a federal district court can dismiss a habeas corpus petition if it appears from the face of the petition that the petitioner is not entitled to relief.  See Lonchar v. Thomas, 517 U.S. 314, 320 (1996); Siers v. Ryan, 773 F.2d 37, 45 (3d Cir. 1985), cert. denied, 490 U.S. 1025 (1989). See also 28 U.S.C. §§ 2243, 2255.

    III.   THE RESIDENTIAL DRUG ABUSE TREATMENT PROGRAM

In 1990, Congress required the Bureau of Prisons to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse."  Crime Control Act of 1990, Pub.L. 101-647, § 2903, 104 Stat. 4789, 4913 (codified as amended at 18 U.S.C. § 3621(b)).  In 1994, Congress amended the statute to provide an incentive for prisoner participation.  The incentive provision reads:

> The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

Violent Crime Control and Law Enforcement Act of 1994, Pub.L. 103-322, § 32001, 108 Stat. 1796, 1897 (codified at 18 U.S.C. § 3621(e)(2)(B)).

The Bureau published a regulation to implement the early release incentive one year later.  Congress did not define, by

4

statute, the term "nonviolent offense."  By regulation and Program Statement, the Bureau determined to rely upon the definition of "crime of violence" contained in 18 U.S.C. § 924(c)(3).  Thus, the Bureau considered ineligible for early release those offenders convicted of a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or ... that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  See 28 C.F.R. § 550.58 (1995); 60 Fed.Reg. 27,692, at 27,695; BOP Program Statement No. 5162.02, § 9 (July 24, 1995).

Following the promulgation of the 1995 regulation, various Courts of Appeals reached differing conclusions on the question of whether the Bureau had discretion to further define a crime of violence as an offense involving a firearm, and thus exclude from eligibility for the early release incentive those prisoners who were incarcerated for such offenses.  See generally Lopez v. Davis, 531 U.S. 230, 234-35 (2001).

In light of the split among the Circuits, the Bureau promulgated an interim regulation on October 15, 1997, and made the regulation effective approximately one week prior, on October 9, 1997.  28 C.F.R. § 550.58(a)(1)(vi)(B) (1997); 62 Fed.Reg. 53,690.  The 1997 interim regulation, like the one it superceded,

made ineligible for the early release incentive those prisoners incarcerated for an offense that involved the possession, use, or carrying of a firearm.  28 C.F.R. § 550.58(a)(1)(vi)(B) (1997). The 1997 interim regulation differs from the 1995 regulation by relying on "the discretion allotted to the Director of the Bureau of Prisons in granting a sentence reduction to exclude [enumerated categories of] inmates," 62 Fed.Reg. at 53,690, rather than purporting to define the statutory terms "prisoner convicted of a nonviolent offense" or "crime of violence."

In Lopez v. Davis, the Supreme Court held that the 1997 interim regulation's categorical exclusion of prisoners based on their involvement with firearms in connection with the commission of a felony was a permissible exercise of the Bureau's discretion.

> According to the Bureau, Congress simply "did not address how the Bureau should exercise its discretion within the class of inmates who satisfy the statutory prerequisites for early release."  Because Congress left the question unaddressed, the Bureau maintains, the agency may exclude inmates either categorically or on a case-by-case basis, subject of course to its obligation to interpret the statute reasonably, see [Chevron U.S.A., Inc. v. Nat. Res. Def. Council, 467 U.S. 837, 844 (1984)], in a manner that is not arbitrary or capricious, see 5 U.S.C. § 706(2)(A).  In this instance, the Bureau urges, it has acted reasonably: Its denial of early release to all inmates who possessed a firearm in connection with their current offense rationally reflects the view that such inmates displayed a readiness to endanger another's life; accordingly, in the interest of public safety, they should not be released months in advance of completing their sentences.

6

>    We agree with the Bureau's position. ...
>
>    ... [W]e further hold that the regulation excluding Lopez is permissible.  The Bureau reasonably concluded that an inmate's prior involvement with firearms, in connection with the commission of a felony, suggests his readiness to resort to life-endangering violence and therefore appropriately determines the early release decision.

Lopez, 532 U.S. at 239-40, 244 (citation and footnotes omitted).  The Court declined to consider the arguments of various amici that the 1997 interim regulation violated the notice-and-comment provisions of the APA, as that argument had not been raised or decided below, or presented in the petition for certiorari.  531 U.S. 230, 244 n.6.

The commentary accompanying publication of the 1997 interim regulation recited the history surrounding the Bureau's previous attempts to regulate in this area, including the 1995 interim regulation, which attempted to define the term "crime of violence," and the subsequent split of authority among the federal courts regarding that regulatory definition.  The commentary further noted that the Bureau was "publishing this change as an interim rule in order to solicit public comment while continuing to provide consideration for early release to qualified inmates."  62 Fed.Reg. at 53,690.  Nevertheless, the effect of the implemented interim regulation was to deny program eligibility to certain categories of inmates confined at that time and until promulgation of a final regulation.  The

7

commentary to the interim regulation further provided that comments on the interim rule were due on December 15, 1997, and that the comments would be considered before final action was taken.

Three years later, on December 22, 2000, the Bureau replaced the 1997 interim regulation with a final regulation, which adopted the 1997 interim regulation without change.  See 65 Fed.Reg. 80,745.  The final regulation was effective as of December 22, 2000.  Id.  The commentary accompanying the final regulation noted that the Bureau had received and considered approximately 150 comments from individuals and organizations, 138 of which were identical.  Id. at 80,747.  Thus, the 2000 final regulation read, in pertinent part, as follows:

> Consideration for early release.
>
> An inmate who was sentenced to a term of imprisonment pursuant to the provisions of 18 U.S.C. Chapter 227, Subchapter D for a nonviolent offense, and who is determined to have a substance abuse problem, and successfully completes a residential drug abuse treatment program during his or her current commitment may be eligible, in accordance with paragraph (a) of this section, for early release by a period not to exceed 12 months.
>
> (a)  Additional early release criteria.
>
> (1) As an exercise of the discretion vested in the Director of the Federal Bureau of Prisons, the following categories of inmates are not eligible for early release:
>
> ...

>                 (vi) Inmates whose current offense is a felony:
>
>                 ...
>
>                 (B) That involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device), ...

28 C.F.R. § 550.58 (2000).

BOP Program Statement 5162.04, <u>Categorization of Offenses</u>, specifically provides that inmates convicted of violating 18 U.S.C. § 922(g) are not eligible for early release under the Residential Drug Abuse Treatment Program.

The Administrative Procedure Act ("APA") requires, with exceptions not relevant here, that proposed rules be published in the Federal Register, not less than 30 days before the proposed rule's effective date, and provide a period for interested persons to comment on the proposed rule, which comments are to be considered by the agency prior to adopting the rule.  <u>See</u> 5 U.S.C. § 553(b), (c), (d).

Following promulgation of the 1997 interim regulation, the United States Court of Appeals for the Ninth Circuit determined that the 1997 interim regulation was invalid, for failure to follow the notice-and-comment requirements of the APA.  <u>See</u>, <u>Paulsen v. Daniels</u>, 413 F.3d 999 (9th Cir. 2005).  The 2000 final rule, however, complied with the notice-and-comment requirements.

More recently, the Court of Appeals for the Ninth Circuit has held that the final 2000 rule is invalid, nevertheless, as "arbitrary and capricious" in violation of § 706(2)(A) of the APA, 5 U.S.C. § 706(2)(A), for failure to set forth a rationale for its categorical exclusion rule. Arrington v. Daniels, 516 F.3d 1106 (9th Cir. 2008).

In Arrington, the Ninth Circuit held that the Bureau's promulgation of § 550.58 was "arbitrary and capricious" because the Bureau failed to state, in the administrative record, an adequate rationale for its categorical exclusion of felons convicted of crimes that involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives.

> A general desire for uniformity provides no explanation for why the Bureau exercised its discretion to achieve consistency through the promulgation of a categorical exclusion rule.  The Bureau's stated desire for uniformity could have been accomplished in any number of ways.  For example, the Bureau could have achieved uniformity by categorically including prisoners with non-violent convictions involving firearms, thus making them eligible for early release: a result that would have been entirely consistent with the statute's aim of offering incentives for prisoner participation in residential substance abuse programs.  Instead, it chose to achieve uniformity by categorically excluding such prisoners from eligibility.  Although either choice in all likelihood would have withstood judicial scrutiny, the Bureau offered no explanation for why it exercised its discretion to select one rather than the other.  The agency's lack of explanation for its choice renders its decision arbitrary and capricious.

Arrington, 516 F.3d at 1114 (emphasis in original) (citation omitted).  The Ninth Circuit refused to consider the offered

10

rationale that offenders with convictions involving firearms pose an increased risk to the public. The public safety rationale, the Ninth Circuit concluded, was not stated in the record and was merely a post hoc rationalization.[4]

---

[4] On January 14, 2009, a new final rule was published in the Federal Register at 74 FR 1892 et seq, which finalized three previously-published proposed rules on the drug abuse treatment program. In publishing the new final rule, the BOP provided a more detailed explanation of its rationale for excluding from eligibility for early release inmates convicted of offenses involving he carrying, possessing, or using of firearms.

> [I]n the correctional experience of the Bureau, the offense conduct of both armed offenders and certain recidivists suggests that they pose a particular risk to the public. There is a significant potential for violence from criminals who carry, possess or use firearms. As the Supreme Court noted in Lopez v. Davis, "denial of early release to all inmates who possessed a firearm in connection with their current offense rationally reflects the view that such inmates displayed a readiness to endanger another's life." Id. at 240. The Bureau adopts this reasoning. The Bureau recognizes that there is a significant potential for violence from criminals who carry, possess or use firearms while engaged in felonious activity. Thus, in the interest of public safety, these inmates should not be released months in advance of completing their sentences.
>
> It is important to note that these inmates are not precluded from participating in the drug abuse treatment program. However, these inmates are not eligible for early release consideration because the specified elements of these offenses pose a significant threat of dangerousness or violent behavior to the public. This threat presents a potential safety risk to the public if inmates who have demonstrated such ehavior are released to the community prematurely. Also, early release would undermine the seriousness of these offenses as reflected by the length of the sentence which the court deemed appropriate to impose.

It is upon the Arrington decision that Petitioner relies here.

## IV.   ANALYSIS

Petitioner contends, pursuant to the Arrington decision, that the 2000 final rule violates the APA proscription against arbitrary and capricious agency action.  Thus, Petitioner contends that his categorical exclusion from consideration for early release, pursuant to the 2000 final rule, is unlawful.

This Court disagrees with Petitioner's position and with the Arrington decision.

The APA's "arbitrary and capricious" standard of review is "narrow."  A federal court may "find that an action is arbitrary and capricious if the agency relied on facts other than those intended by Congress, did not consider 'an important aspect' of the issue confronting the agency, provided an explanation for its decision which 'runs counter to the evidence before the agency,' or is entirely implausible."  Rite Aid of Pennsylvania, Inc. v. Houstoun, 171 F.3d 842, 853 (3d Cir. 1999) (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463

---

74 FR 1892, 1895 (Jan. 14, 2009).  The new regulation applies to anyone whose clinical interview (to qualify for participation in the Residential Drug Abuse Treatment Program) takes place on or after March 16, 2009.  To coincide with the effective date of the new regulation, the BOP rescinded Program Statement 5162.04 and replaced it with Program Statement 5162.05, effective March 16, 2009.  Also effective March 16, 2009, 28 C.F.R. § 550.58 was superseded by a new regulation which appears at 28 C.F.R. § 550.55.

U.S. 29, 43-44 (1983)).  Moreover, a federal court "must 'uphold [an agency's] decision of less than ideal clarity if the agency's path may reasonably be discerned.'" Rite Aid, 171 F.3d at 853 (quoting Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43) (internal citations omitted).  Indeed, "on occasion, regulations with no statement of purpose have been upheld where the agency's purpose was considered obvious and unmistakable." Citizens to Save Spencer County v. U.S. Environmental Protection Agency, 600 F.2d 844, 884 (D.C. Cir. 1979) (emphasis added) (quoted with approval in Muolo v. Quintana, 2009 WL 82491 (W.D. Pa. Jan. 8, 2009)).

Virtually every court to consider the matter has rejected the rationale of Arrington.  See Snipe v. Dept. of Justice, 2008 WL 5412868 (N.D.W.Va. Dec. 23, 2008) (collecting cases).  The Court of Appeals for the Sixth Circuit has held that the Lopez[5] decision "does directly control" the argument that this challenged regulation is arbitrary.  See Harrison v. Lamanna, 19

---

[5] As noted above, in Lopez v. Davis, 531 U.S. 230, 240 (2001), the Supreme Court agreed with the Bureau of Prisons' argument that "the agency may exclude inmates either categorically or on a case-by-case basis, subject of course to its obligation to interpret the statute reasonably, see Chevron[ v. Natural Resources Defense Council, 467 U.S. 837, 884 (1984)], in a manner that is not arbitrary or capricious, see 5 U.S.C. § 706(2)(A)."  The Court went on, "Having decided that the Bureau may categorically exclude prisoners based on their preconviction conduct, we further hold that the [1997 interim regulation] is permissible.  The Bureau reasonably concluded that an inmate's prior involvement with firearms, in connection with the commission of a felony, suggests his readiness to resort to life-endangering violence and therefore appropriately determines the early release decision."  531 U.S. at 244 (footnote omitted).

13

Fed.Appx. 342, 2001 WL 1136080 (6th Cir. 2001).  See also Cushenberry v. Federal Medical Center, 530 F.Supp.2d 908, 913 (E.D. Ky. 2008) (same); Robinson v. Gonzaales, 493 F.Supp.2d 758, 763-64 (D. Md. 2007) (same); Chevrier v. Marberry, 2006 WL 3759909, *4-5 (E.D. Mich. 2006) ("There is nothing unreasonable in the BOP's common-sense decision that there is a significant potential for violence from criminals who possess firearms.").

This Court agrees that the Lopez decision directly controls the conclusion that this challenged regulation, which is identical to the 1997 interim regulation at issue in Lopez, is not "arbitrary and capricious" in violation of the APA.

To the extent Lopez does not directly control the issue, this Court agrees with Chief Magistrate Judge Baxter, of the Western District of Pennsylvania, "that the Bureau chose the categorical exclusion set forth in 28 C.F.R. § 550.58(a)(1)(vi)(B) because of the increased risk that felons with convictions involving firearms might pose to the public, can be reasonably discerned from the administrative record."  Muolo, 2009 WL 82491, *9.

> It is a point that is evident from review of the litigation to which the Bureau referred in the Federal Register.  The program statement at the center of that litigation explained that the Bureau originally chose to categorically exclude inmates convicted of drug offense violations who received sentence enhancements for possession of a weapon because the "possession of a dangerous weapon during commission of a drug offense poses a substantial risk that force may be used against persons or property."  PS 5162.02, § 9.  Also, the

14

> legal decisions issued by the courts of appeals in that litigation showed that the Bureau sought to categorically exclude from the early release benefit certain felons who used guns during their offenses because "the BOP equate[s] gun possession and drug dealing with violence." ... When the Bureau's effort to categorically exclude such inmates was frustrated by courts of appeals that invalidated its approach, the Bureau amended its regulation so as to achieve the same result through a method that would cure the problems identified by those courts.  In sum, the public safety rationale justifying the categorical exclusion of inmates whose current offense is a felony that involved the carrying, possession, or use of a firearm or other dangerous weapon or explosive was not a "post hoc" rationalization, but was evident in the litigation that prompted the amendment to 28 C.F.R. 550.58 (1995) and which the Bureau referenced in the Federal Register.

Muolo, 2009 WL 82491, *9 (citations omitted).  This Court agrees with Judge Baxter's further reflection that the Bureau's public safety rationale can be reasonably discerned from the other categorical exclusions contained in the same regulation, including discretionary categorical exclusions of: "(1) inmates who have a prior felony or misdemeanor conviction for homicide, forcible rape, robbery, or aggravated assault, or child sexual abuse offenses; (2) inmates whose current offense is a felony that has as an element the actual, attempted, or threatened use of physical force against the person or property of another; (3) inmates whose current offense is a felony that by its nature or conduct presented a serious potential risk of physical force against the person or property of another; and, (4) inmates whose current offense is a felony that by its nature or conduct involves sexual abuse offenses committed upon children.  28

U.S.C. § 50.58(a)(1)(iv), (vi)(A), (C)-(D)." Muolo, 2009 WL 82491, *10. Finally, this Court agrees that it is telling that none of the 150 commenters to the proposed rule challenged the rule on the basis that there was no public safety rationale to support the categorical exclusions contained in the rule. Id. Thus, the rationale for the categorical exclusion of inmates whose current offense involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives can be reasonably discerned from the administrative record and is not "arbitrary or capricious."

In addition, this Court is persuaded by reasoning of the Court of Appeals for the Eighth Circuit, which has explicitly rejected the Arrington standard that the rationale for agency action, in a rulemaking case such as this, must appear "on the record."

> The APA provides that a reviewing court must set aside a final agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Because this is a deferential standard, "the orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained." SEC v. Chenery Corp., [318 U.S. 80, 94 (1943)]. "The courts may not accept appellate counsel's post hoc rationalizations for agency action." Burlington Truck Lines, Inc. v. United States, [371 U.S. 156, 168 (1962)]. However, courts "will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Bowman Transp., Inc., v. Arkansas-Best Freight Sys., Inc., [419 U.S. 281, 286 (1974)].

These general principles, like 5 U.S.C. § 706(2)(A) itself, apply to both agency rulemaking and adjudication that is subject to the APA. But most Supreme Court cases applying these principles-such as <u>Chenery</u>, <u>Burlington Truck Lines</u>, and <u>Bowman</u>-involved agency adjudications conducted under 5 U.S.C. §§ 556-57 (or their APA predecessor), which require that agency decisions be based on the administrative record, and define what that record must include. This case involves agency rulemaking under 5 U.S.C. § 553, which provides only that the agency shall publish notice of the proposed rulemaking, afford interested persons an opportunity to participate, and "incorporate in the rules adopted a concise general statement of their basis and purpose," § 553(c). The Supreme Court has repeatedly emphasized "that generally speaking this section of the Act established the maximum procedural requirements which Congress was willing to have the courts impose upon agencies in conducting rulemaking procedures." <u>Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.</u>, [435 U.S. 519, 524 (1978)], and cases cited. Under § 553, an agency determination need not be made "on the record" unless the statute being applied so requires. <u>United States v. Allegheny-Ludlum Steel Corp.</u>, [406 U.S. 742, 756-57 (1972)]. Thus, the Ninth Circuit panel in <u>Arrington</u> erred when it disregarded the BOP's public safety rationale simply because the court could not find that rationale in an "administrative record" which the court never defined but seemed to limit to the BOP's Federal Register notice in 2000 finalizing the previously interim rule.

Though rulemaking decisions, which are prospective and legislative in nature, need not be made on a confined administrative record, they still must be reviewed under § 706(2)(A) and "upheld, if at all, on the basis articulated by the agency itself." <u>Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.</u>, [463 U.S. 29, 50 (1983)]; <u>see</u> <u>Menorah Med. Ctr. v. Heckler</u>, 768 F.2d 292, 295 (8th Cir.1985). In <u>State Farm</u>, the Court refused to enforce an agency order rescinding a prior rule, explaining that "an agency changing its course by rescinding a rule is obligated to supply a reasoned analysis for the change beyond that which may be required when an agency does not act in the first instance." [463 U.S. at 42.]  We have construed <u>State Farm</u> as requiring a fuller

17

> explanation when "a new rule reflects a departure from the agency's prior policies." Macon County Samaritan Mem'l Hosp. v. Shalala, 7 F.3d 762, 765-66 (8th Cir.1993). Here, the BOP has consistently sought to implement the same substantive policy in the face of continued judicial resistance. In these circumstances, it is appropriate to discern the reasons for the agency's final rule from the various prior interim rules, Program Statements, and litigation positions reflecting that consistent policy. The Supreme Court discerned that public safety was the basis for the BOP's exclusion of firearm offenders and concluded that the agency's rule was substantively reasonable in Lopez, [531 U.S. at 244.] That, we conclude, is all 5 U.S.C. §§ 553(c) and 706(2)(A) require. Accord Harrison v. Lamanna, 19 Fed.Appx. 342 (6th Cir.2001) (unpublished).

Gatewood v. Outlaw, 560 F.3d 843, 846 -848 (8th Cir. 2009) (footnotes omitted). The rationale for the challenged regulation here is fully stated in the history appended by the BOP to the 1997 interim regulation and the litigation and events referenced therein.[6]

Petitioner also contends that Program Statement 5162.04, as opposed to the BOP regulations, is invalid because it was not

---

[6] To the extent the Petition could be construed as asserting a claim that the BOP violated Petitioner's equal protection rights by continuing to enforce its early release regulations as written except in the Ninth Circuit, pursuant to the Arrington decision, the argument is patently meritless. See, e.g., Caro v. Ziegler, 2009 WL 1872977 (N.D.W.Va. June 29, 2009); Mack v. Eichenlaub, 2009 WL 1849961 (N.D. Fla. June 26, 2009), R&R adopted, 2009 WL 2365706 (N.D. Fla. June 29, 2009); Carver v. Chapman, 2009 WL 1651512 (N.D. Tex. June 11, 2009); King v. Federal BOP, 2009 WL 274948 (D.S.C. March 23, 2009), affirmed, 2009 WL 2337116 (4th Cir. July 30, 2009); Norcutt v. Zych, 2009 WL 514083 (E.D. Mich. March 2, 2009); Minotti v. Whitehead, 584 F.Supp.2d 750, 760 n.12 (D.Md. 2008) (also noting that prisoners have no due process right to early release).

promulgated pursuant to the APA "notice and comment" requirement. However, the "notice and comment" requirement does not apply to agency "interpretive rules," as opposed to "legislative rules." 5 U.S.C. § 553(b).

> Legislative rules are subject to the notice and comment requirements of the APA because they work substantive changes in prior regulations or create new law, rights, or duties. [Interpretive] rules, on the other hand, seek only to interpret language already in properly issued regulations.... [Interpretive], or procedural, rules do not themselves shift the rights or interests of the parties, although they may change the way in which the parties present themselves to the agency.... [Interpretive] or procedural rules and statements of policy are exempted from the notice and comment requirement of the APA.

SBC Inc. v. FCC, 414 F.3d 486, 497-98 (3d Cir.2005) (quotations and citations omitted).

Bureau of Prisons program statements generally are construed as internal agency guidelines, "akin to an 'interpretive rule' that 'do[] not require notice and comment.'" Reno v. Koray, 515 U.S. 50, 61 (1995) (quoting Shalala v. Guernsey Mem. Hosp., 514 U.S. 87, 99 (1995)).  Certainly, the Program Statements at issue here, which implement the statute and properly-promulgated regulations governing the Residential Drug Abuse Treatment Program, are interpretive rules exempt from the APA "notice and comment" requirement.  See, e.g., Moyeda v. Pearson, 2009 WL 1044316 (S.D. Miss. Apr. 17, 2009) (rejecting claim that APA "notice and comment" rules apply to BOP program statements implementing exclusion of inmates with convictions involving

firearms from early release eligibility under Residential Drug Abuse Treatment Program); Mora-Meraz v. Thomas, 2009 WL 839479 (D. Ore. March 30, 2009) (rejecting argument that APA "notice and comment" rules apply to Program Statement 5330.10); Huerta v. Berkebile, 2009 WL 230163 (N.D. Tex. Jan. 30, 2009) (rejecting argument that APA "notice and comment" rules apply to Program Statement 5162.04); Minotti v. Whitehead, 584 F.Supp.2d 750, 763 (D.Md. 2008) (same); Holloway v. Marberry, 2007 WL 2178314 (E.D. Mich. July 30, 2007) (same); Johnson v. Holinka, 2007 WL 1446476 (D.Minn. May 14, 2007) (same, with respect to Program Statements 5162.04 and 5330.10); Kotz v. Lappin, 515 F.Supp.2d 143, 150-51 (D.D.C. 2007) (rejecting argument that APA "notice and comment" rules apply to Program Statement 5331.01, which provides that inmates may only once earn early release for successful completion of the Residential Drug Abuse Treatment Program).

For all of the foregoing reasons, Petitioner is not entitled to relief on this Petition.

V.   CONCLUSION

For the reasons set forth above, the Petition will be dismissed with prejudice.  An appropriate order follows.


At Camden, New Jersey              /S/NOEL L. HILLMAN
                                   Noel L. Hillman
                                   United States District Judge

Dated: September 11, 2009

20